UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FOUNDATION VENTURES, LLC and
G.T. JEFFERS & COMPANY, LLC

       Plaintiffs,

  - against -

F2G, LTD.

       Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3|11|1C

**OPINION AND ORDER**

08 Civ. 10066 (PKL)

**APPEARANCES**

SCHLAM STONE & DOLAN LLP
Erik Scott Groothuis
26 Broadway
New York, NY 10004

Attorney for Plaintiffs

OLSHAN, GRUNDMAN, FROME, ROSENZWEIG & WOLOSKY, LLP
Allen Rafael Wolff
Joshua S. Androphy
65 East 55th Street
New York, NY 10022

Attorneys for Defendant

1

**LEISURE**, **District Judge**:

Plaintiffs, Foundation Ventures, LLC ("FV") and G.T. Jeffers & Company, LLC ("G.T. Jeffers") bring this diversity action for breach of contract and unjust enrichment against defendant, F2G, Ltd. ("F2G") arising from an alleged contract appointing FV as F2G's exclusive finder to raise capital for F2G.  F2G moves pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss all claims asserted by FV and G.T. Jeffers.  For the reasons discussed below, F2G's motion to dismiss FV's claims is DENIED, and F2G's motion to dismiss G.T. Jeffers's claims is GRANTED.


## Background

FV and G.T. Jeffers bring this diversity action against F2G for breach of contract and unjust enrichment.  The facts that follow are taken from the Complaint and do not constitute the findings of the Court.  Plaintiff FV, a limited liability company formed in New York, with a principal place of business in New York City, is a "marketing and networking firm focused on the life sciences and information technology industries." (Compl. ¶ 3.)  The primary owners of FV are Joseph Lucchese and Philip Taub.  (Id.)  Plaintiff G.T. Jeffers, a limited liability company formed in Delaware, with a principal place of business in Florida, is a brokerage and investment advisor firm

2

registered with FINRA (formerly NASD). (Id. ¶ 4.)  FV offers
securities through G.T. Jeffers and Messrs. Lucchese and Taub
work out of G.T. Jeffers's branch office in New York.  (Id. ¶¶
3-4.)  Defendant F2G, headquartered in Manchester, England, is a
privately held company engaged in the research and development
of patented compounds and technologies to treat serious fungal
disease.  (Id. ¶ 5.)

FV and F2G entered into an agreement on September 19, 2007
(the "Contract"), appointing FV to act as F2G's "exclusive
finder" to raise $25 million in capital for F2G.  (Id. ¶¶ 1, 9.)
The Contract is comprised of two parts—a letter agreement (the
"Agreement") and the Standard Business Terms (the "Terms").
(Id. ¶ 9.)  The Contract provides that if there is a conflict
between the Agreement and the Terms, the Terms shall govern.
(Id.)  Although both parties acknowledge, and quote from, the
Contract, it is not attached to the Complaint or the parties'
briefs.

Broadly, "the Contract obligate[s] F2G [to] pay FV for FV's
efforts in identifying qualified institutional investor
candidates to provide equity financing to F2G."  (Id. ¶ 2.)  F2G
agreed to pay FV a "'Success Fee' as consideration for FV's
efforts in helping F2G secure equity financing."  (Id. ¶ 10.)
The Success Fee consists of:

(1) a cash amount equal to six percent of the investment amount contributed by investors that were not shareholders of F2G when the Contract was signed; and (2) a cash amount equal to six percent of the investment amount in excess of $8,000,000 contributed by investors who were shareholders of F2G when the Contract was signed.

(Id.)  The Contract provides for additional compensation to FV in the form of warrants.  Pursuant to "Section VI of the Agreement," upon completion of a financing transaction, FV is entitled "'to purchase warrants . . . equal to two percent . . . of the Investment Amount for a purchase price equal to $0.02 per Warrant.'"  (Id. ¶ 11.)  In the event that FV obtains, but F2G decides not to pursue, a "'bona fide term sheet[,] with a minimum fully diluted pre money valuation of $17,000,000,'" FV is entitled to fifty percent of its Success Fee as a breakup fee.  (Id. ¶ 12.)  The Contract also obligates F2G to pay FV a monthly $15,000 consulting fee.  (Id. ¶ 13.)  The Contract further provides that unpaid fees accrue interest at twelve percent per year and that F2G is responsible for all legal fees incurred by FV in collecting overdue payment.  (Id. ¶ 15.)

Of particular relevance to the instant motion is the portion of the Contract that states that "'all transactions in [F2G's] securities contemplated by this Agreement will be effected through a broker-dealer that is registered under the Securities Exchange Act of 1934, as amended, and is a member of the National Association of Securities Dealers, Inc.'"  (Id. ¶

16.)  FV is not a registered securities broker-dealer and,
instead, offers securities through G.T. Jeffers, which is a
registered broker.  (Id. ¶¶ 4, 30.)  Messrs. Lucchese and Taub
are registered with the NASD[1] and "performed services for F2G on
FV's behalf."  (Id. ¶ 31.)  FV alleges that "F2G was well aware
that FV would, if necessary, use the licenses of Messrs.
Lucchese and Taub, as well as the registered broker-dealer G.T.
Jeffers, in order to carry out its obligations under the
Contract" and that "every page of FV's website disclosed the
relationship between FV and G.T. Jeffers by stating that
'Securities [are] offered through G.T. Jeffers and Company.'"
(Id. ¶ 32.)  FV also states that it "repeatedly discussed" with
F2G "that securities transactions would be effected through a
registered broker-dealer."  (Id.)

Pursuant to the Contract, FV "expended considerable work
and effort to evaluate and identify the candidates most likely
to invest in F2G and engaged in discussions with a large number
of the[m,] . . . reviewed and improved marketing documents for
F2G, contacted and evaluated many institutional investors[,] . .
. and attended investor meetings in various locations."  (Id. ¶¶
17-18.)  FV also "participated in conference calls alongside F2G

---

Mr. Lucchese holds a Series 7 (General Securities Representative) and Series
63 (Uniform Securities Agent State Law Exam) license and Mr. Taub holds a
Series 7, Series 24 (General Securities Principal), and Series 63 license.
(Compl. ¶ 31.)  Mr. Taub signed the Contract as Managing Partner of FV.
(Id.)

with potential investors . . . [and] worked closely with F2G
management."  (Id. ¶ 18.)

FV also found an investor for F2G, a health care venture
capital firm called Kearny Venture Partners ("Kearny").  (Id. ¶
19.)  FV obtained a bona fide term sheet from Kearny for
financing worth $25 million, which "met all the qualifications
of the Contract."  (Id. ¶¶ 19-20.)  F2G ultimately decided not
to pursue a financing deal with Kearny and rejected Kearny's
financing offer.  (Id. ¶ 24.)  "Had the Kearny investment been
consummated, FV would have earned a Success Fee in the amount of
$1,500,000.  (Id.)  As a result, FV claims that it is entitled
to the breakup fee associated with the Kearny term sheet in the
amount of $750,000.  (Id. ¶ 25.)  FV sent F2G two invoices for
payment of the $750,000 breakup fee—the first on June 23, 2008,
payable to FV, and the second on August 11, 2008, payable to
G.T. Jeffers.  (Id.)

In August 2008, F2G announced that it had completed a
financing transaction worth $11.8 million with its shareholders
who owned shares of F2G at the time the Contract was signed.
(Id. ¶ 23.)  FV claims that, upon completing the financing
transaction, F2G "became obligated to pay FV a Success Fee of
six percent of the amount contributed [by] the investors in
excess of $8,000,000," totaling $228,000, as well as warrants,
"calculated as 2% of the $11,800,000 financing," totaling

6

$236,000.  (Id. ¶ 26.)  Accordingly, FV sent F2G an invoice for the Success Free and warrants on October 10, 2008.  (Id.)  FV also states that it is entitled to "$118,985.52 in out-of-pocket expenses and consulting fees," as well as twelve percent interest on all money owed and legal fees.  (Id. ¶¶ 27-28.) Despite FV's "repeated demands," F2G has refused to pay any of these fees.  (Id. ¶ 33.)

FV and G.T. Jeffers initially brought this action in the Supreme Court of the State of New York, New York County, on October 16, 2008.  F2G removed the action to this Court on November 19, 2008.  F2G subsequently moved under Rule 12(b)(6) to dismiss the Complaint for failure to state a claim.  F2G argues that FV has no legal right to enforce the Contract or to assert a claim for unjust enrichment because the Contract is void under the Securities and Exchange Act of 1934 (the "1934 Act") since it requires FV to act illegally as an unregistered broker.  (Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Mem.") 5-13.)  F2G further argues that G.T. Jeffers has failed to state any claim for relief because the Complaint provides no facts supporting any cause of action on G.T. Jeffers's behalf.  (Id. 14-20.)

## Discussion

This Court first addresses the standard for a Rule 12(b)(6) motion to dismiss.  Then it determines whether the Complaint properly states a claim for breach of contract and unjust enrichment for FV and G.T. Jeffers, respectively, and, if not, whether leave to amend should be granted.

## I. Rule 12(b)(6) Standard

F2G moves to dismiss the Complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss, the Court considers "all 'well-pleaded factual allegations' to be true, [to] 'determine whether they plausibly give rise to an entitlement to relief.'" Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)).  In determining whether pleadings meet this plausibility standard, a court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950; see also United States v. Lloyds TSB Bank PLC, 639 F. Supp. 2d 326, 338-39 (S.D.N.Y. 2009) (same). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 129 S. Ct. at 1950.  "When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.; see also Lloyds TSB, 639 F. Supp. 2d at 339 (same).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950; S. Cherry St., LLC v. Hennessee Group LLC, 573 F.3d 98, 110 (2d Cir. 2009) (Kearse, J.) (same).

## II.  FV's Breach of Contract Claim

FV pleads that F2G "materially breached the Contract by failing to pay FV" despite FV's full compliance with its obligations under the Contract.  (Compl. ¶¶ 37-38.)  F2G asserts that FV's cause of action for breach of contract should be dismissed on the grounds of illegality because FV "alleges that it agreed to act, and did act, as a securities broker without being registered to do so."  (Def.'s Mem. 1.)  The Court first addresses the breach of contract standard under New York law and then analyzes whether FV pleads a breach of contract claim.

A. Breach of Contract Standard

To state a breach of contract claim under New York law,[2] a plaintiff must plead:  (1) the existence of a contract; (2) the adequate performance of the contract by plaintiff; (3) the breach of the contract by defendant; and (4) damages.  See 24/7 Records, Inc. v. Sony Music Entm't, Inc., 429 F.3d 39, 41-42 (2d Cir. 2005); Ferguson v. Lion Holding, Inc., 478 F. Supp. 2d 455, 467 (S.D.N.Y. 2007) (Leisure, J.).  "Under New York law, a valid contract must be supported by consideration and include mutual assent, legal capacity, and legal subject matter."  Jones-Soderman v. Mazawey, No. 09 Civ. 3185, 2010 WL 54759, at *5 (S.D.N.Y. Jan. 6, 2010); see also Murray v. Northrop Grumman Info. Tech., Inc., 444 F.3d 169, 178 (2d Cir. 2006).

Ordinarily, a contract with illegal subject matter is considered void.  Sirota v. Champion Motor Group, Inc., 849 N.Y.S.2d 426, 430, 18 Misc. 3d 862 (Sup. Ct. 2008) ("It is well settled that a contract which violates a prohibitory statute or which cannot be performed without violation of that statute is an unlawful undertaking and is illegal, void and unenforceable."); see also Kaiser-Frazer Corp. v. Otis & Co., 195 F.2d 838, 843 (2d Cir. 1952) (Hand, A., J.) ("[A] contract which violates the laws of the United States and contravenes the

_____

[2] The parties do not dispute that New York law governs the claims in this case.  (Compl. ¶ 7.)

10

public policy as expressed in those laws is unenforceable."). A
right of action for breach generally cannot arise from an
illegal contract. See Bonilla v. Rotter, 829 N.Y.S.2d 52, 53,
36 A.D.3d 534 (App. Div. 2007) ("'It is the settled law of this
State . . . that a party to an illegal contract cannot ask a
court of law to help him carry out his illegal object, nor can
such a person plead or prove in any court a case in which he, as
a basis for his claim, must show forth his illegal purpose.'"
(quoting Stone v. Freeman, 298 N.Y. 268, 271, 82 N.E.2d 571
(1948) (alterations in original)); Sabia v. Mattituck Inlet
Marina and Shipyard, Inc., 805 N.Y.S.2d 346, 347, 24 A.D.3d 178
(App. Div. 2005) (holding that plaintiffs could not recover on a
breach of contract claim where the deal was documented in a
"fictional manner" to avoid tax payments); Scotto v. Mei, 642
N.Y.S.2d 863, 865, 219 A.D.2d 181 (App. Div. 1996) ("[I]t is
black-letter law that a contract entered into in violation of a
statute is an unlawful undertaking and such an illegal contract
can not give rise to a viable cause of action."). However, a
contract that violates a statute may be enforced where the
statute "does not provide expressly that its violation will
deprive the parties of their right to sue on the contract, and
the denial of relief is wholly out of proportion to the
requirements of public policy." Lloyd Capital Corp. v. Pat
Henchar, Inc., 80 N.Y.2d 124, 127, 603 N.E.2d 246 (1992); see

11

also Wowaka & Sons, Inc. v. Pardell, 672 N.Y.S.2d 358, 360, 242
A.D.2d 1 (App. Div. 1998) ("[G]enerally, the violation of a
statutory provision will render a contract unenforceable only
when the statute so provides, and the loss of judicial recourse
would not be out of proportion to the requirements of public
policy or appropriate individual punishment."). An illegal
contract also may be enforced "'where there are [other]
regulatory sanctions and statutory penalties in place to redress
violations of the law,' or where the party who is alleged to
have breached the contract is attempting to improperly use
public policy 'as a sword for personal gain rather than a shield
for the public good.'" Eber Bros. Wine & Liquor Corp. v. Rare
Spirits, Inc., 864 N.Y.S.2d 236, 243, 21 Misc. 3d 201 (Sup. Ct.
2008) (alteration in original) (quoting Lloyd Capital, 80 N.Y.2d
at 128).

Taking the facts that FV and G.T. Jeffers plead as true, FV
states a plausible claim for relief for breach of contract by
stating that: (1) FV and F2G agreed to and signed the Contract
in September 2007 (Compl. ¶ 9); (2) FV fully performed under the
Contract by endeavoring to find funding sources for F2G and
ultimately succeeding (id. ¶ 29); (3) F2G breached the Contract
by not paying FV its earned fees and not issuing the warrants
required under the Contract (id. ¶ 28); and (4) FV is entitled
to fees in excess of $1.3 million (id. 10 (Prayer for Relief)).

However, F2G claims that the first element of a breach of
contract claim—the existence of a contract—is not satisfied
because "according to the Complaint, [FV] agreed to act as a
broker-dealer and did act as a broker-dealer" without
registering with the NASD, as required by section 15(a)(1) of
the 1934 Act, rendering the Contract void under section 29(b) of
the 1934 Act.  (Def.'s Mem. 9, 12.)  F2G further argues that
"[e]ven if it had been possible" for FV to perform the Contract
"in a legal manner, [FV's] allegations establish that it was
performed in an illegal manner."  (Id. 13.)  FV maintains that
the Contract is enforceable because its terms require FV to act
legally as a "finder," not as an unregistered broker-dealer.
(Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss. ("Pls.'
Opp'n") 7-8.)  In addressing F2G's illegality argument, the
Court begins by analyzing sections 15(a)(1) and 29(b) of the
1934 Act, and then addresses whether F2G has established that
the Contract is illegal.

   B. Section 15(a)(1) of the 1934 Act

Section 15(a)(1) of the 1934 Act provides that:  "It shall
be unlawful for any broker or dealer . . . to effect any
transactions in, or to induce or attempt to induce the purchase
or sale of, any security . . . unless such broker or dealer is
registered in accordance with subsection (b) of this section."

15 U.S.C. § 78o(a)(1).  The 1934 Act defines a broker as "any
person engaged in the business of effecting transactions in
securities for the account of others."  15 U.S.C. §
78c(a)(4)(A).

    To determine whether a party has acted as a broker, courts
consider a number of factors, including whether the purported
broker:  (1) is an employee of the issuer of the securities; (2)
receives transaction-based commission as opposed to a salary;
(3) sells, or previously sold, the securities of other issuers;
(4) participates in negotiations between the issuer and the
investor; (5) makes valuations regarding the merits of the
investment or gives advice; and (6) finds investors actively
rather than passively.  See SEC v. Martino, 255 F. Supp. 2d 268,
283 (S.D.N.Y. 2003) (holding that an unlicensed broker who was
"involved in every aspect of the numerous securities
transactions at issue" violated section 15(a)(1) of the 1934
Act); SEC v. Margolin, No. 92 Civ. 6307, 1992 WL 279735, at *5
(S.D.N.Y. Sept. 30, 1992) (Leisure, J.) (stating that brokerage
conduct may include "receiving transaction-based compensation,
advertising for clients, and possessing client funds and
securities"); SEC v. Hansen, No. 83 Civ. 3692, 1984 WL 2413, at
*10-11 (S.D.N.Y. Apr. 6, 1984) (holding that defendant acted as
an unregistered broker in violation of section 15(a)(1) where he
was paid commission, rather than a salary, previously sold

14

securities of another issuer, actively and aggressively found investors, and frequently gave those investors extensive advice regarding the merits of investments). Courts also consider whether the alleged broker regularly engages in securities transactions. See Martino, 255 F. Supp. 2d at 283 (stating that, in determining whether an individual or entity is a broker, "courts consider whether the individual may be 'characterized by a certain regularity of participation in securities transactions at key points in the chain of distribution'" (quoting Hansen, 1984 WL 2413, at *10)); Margolin, 1992 WL 279735, at *5 (holding that plaintiff made a substantial showing of likelihood of success on the merits that defendant was an unregistered broker where, among other things, defendant "participated in dozens of transactions for various clients," demonstrating "'regularity of business activity' which supports the statutory definition of broker or dealer").

State and federal courts in New York recognize a difference between brokers and finders. "[A] finder finds potential buyers or sellers, stimulates their interest, and brings parties together, while a broker brings the parties to an agreement on particular terms." Jones v. Whelan, No. 99 Civ. 11743, 2002 WL 485729, at *7 (S.D.N.Y. Mar. 29, 2002) (citing Train v. Ardshiel Assocs., Inc., 635 F. Supp. 274, 279 (S.D.N.Y. 1986) ("Finders find potential buyers or sellers, stimulate interest and bring

15

parties together.  Brokers bring the parties to an agreement on particular terms."), aff'd, 805 F.2d 391 (2d Cir. 1986))); Warshay v. Guinness PLC, 750 F. Supp. 628, 636 (S.D.N.Y. 1990) ("[F]inders, unlike brokers, do not play a role in the negotiation, drafting and signing of a purchase agreement and closing documents."), aff'd, 935 F.2d 1278 (2d Cir. 1991); Ne. Gen. Corp. v. Wellington Adver., Inc., 82 N.Y.2d 158, 162-63, 624 N.E.2d 129 (1993) ("A finder is not a broker, although they perform some related functions. . . .  The finder is required to introduce and bring the parties together, without any obligation or power to negotiate the transaction, in order to earn the finder's fee.  While a broker performs that same introduction task, the broker must ordinarily also bring the parties to an agreement.").

### C. Section 29(b) of the 1934 Act

Section 29(b) of the 1934 Act provides in relevant part that:

> Every contract made in violation of any provisions of this title or of any rule or regulation thereunder, and every contract . . . the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this title or any rule or regulation thereunder, shall be void . . . as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract[.]

16

15 U.S.C. § 78cc(b). "To establish a violation under Section 29(b) of the 1934 Act, the movant must 'show that (1) the contract involved a prohibited transaction, (2) [the movant] is in contractual privity with the [opposing party], and (3) [the movant] is in the class of persons the [1934] Act was designed to protect.'" Log On Am., Inc. v. Promethean Asset Mgmt., LLC, 223 F. Supp. 2d 435, 451-52 (S.D.N.Y. 2001) (quoting Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co., 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992) (Leisure, J.)).

Contracts made in violation of section 29(b) are not void per se; rather, they are "voidable at the option of the innocent party." Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 387-88, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970) (holding that section 29(b) "does not compel the conclusion that the contract is a nullity, creating no enforceable rights" and lower federal courts' interpretation that section 29(b) renders "the contract merely voidable at the option of the innocent party . . . is eminently sensible"); Cary Oil Co. v. MG Refining & Mktg., Inc., 230 F. Supp. 2d 439, 452-53 (S.D.N.Y. 2002) ("'[E]ven contracts made in violation of the securities laws, and thus subject to Section 29(b) of the Securities Exchange Act of 1934, which states that such contracts are 'void,' are merely voidable at the option of the innocent party.'" (quoting Commodity Futures Trading Comm'n v. Hanover Trading Corp., 34 F. Supp. 2d 203, 206 (S.D.N.Y.

1999) (Kaplan, J.))). Only an unwilling innocent may seek to

rescind a contract under section 29(b). See Mills, 396 U.S. at

388 ("The interests of the victim are sufficiently protected by

giving him the right to rescind."); Buffalo Forge Co. v. Ogden

Corp., 717 F.2d 757, 759 (2d Cir. 1983) (upholding district

court's dismissal of a rescission action under section 29(b)

where plaintiffs, who were seeking to rescind the contract, were

not "unwilling innocent[s]"), aff'g 555 F. Supp. 892, 906 (1983)

(holding that plaintiffs who "willingly entered into the

questioned contract and knew of all the facts which [they] now

claim[] constitute 'manipulation,' . . . may not invoke the

provisions of section 29(b) to challenge the contract"); Kidder

Peabody & Co. v. Unigestion Int'l, Ltd., 903 F. Supp. 479, 498

(S.D.N.Y. 1995) ("Courts have construed Section 29(b) to render

any contract made in violation of the Exchange Act 'voidable' at

the option of the wronged party." (quoting Mills, 396 U.S. at

387)); Drasner v. Thomson McKinnon Sec., Inc., 433 F. Supp. 485,

502 (S.D.N.Y. 1977) ("Section 29(b) may only be invoked by an

'unwilling innocent party.'" (quoting Naftalin & Co., Inc. v.

Merrill Lynch, Pierce, Fenner & Smith, Inc., 469 F.2d 1166, 1182

(8th Cir. 1972)). Under section 29(b), "only unlawful contracts

may be rescinded, not unlawful transactions made pursuant to

lawful contracts." Zerman v. Jacobs, 510 F. Supp. 132, 135

(S.D.N.Y. 1981) (Weinfeld, J.), aff'd, 672 F.2d 901 (2d Cir.

1981); see also Kidder, 903 F. Supp. at 498; Pompano, 794 F.
Supp. at 1288.

   D. Analysis

   FV argues that F2G may not void the Contract under section
29(b) because F2G knowingly agreed to the terms of the Contract
and, therefore, is not an unwilling innocent party. (Pls.'
Opp'n 10-11.)  F2G responds that the unwilling innocent standard
is inapplicable here because it applies solely to "the question
of whether an unwilling innocent party . . . could enforce a
contract despite its unlawfulness," not to whether a defendant--
such as F2G—must be an unwilling innocent to defend against a
plaintiff's enforcement of an allegedly illegal contract. (See
Def.'s Reply Mem. of Law in Further Supp. of Mot. to Dismiss
("Def.'s Reply") 6.)  The Court need not resolve this dispute
because even if F2G must be, and is, an unwilling innocent party
to the Contract with standing to seek rescission, F2G's motion
to dismiss FV's breach of contract claim still would be denied
because, as pleaded, neither the Contract nor FV's performance
pursuant to it is illegal as a matter of law.

   The provisions of the Contract discussed in the Complaint
do not explicitly require FV to act as a broker.  (Compl. ¶¶ 9-
16.)  Nonetheless, F2G states that even if the Contract could
have been performed legally, FV's allegations establish that it

was performed illegally. (Def.'s Mem. 13.) The parties dispute
whether the activities that FV alleges it engaged in under the
Contract violate section 15(a)(1) of the 1934 Act. F2G states
that FV's "activities demonstrate that [it] was acting as a
broker-dealer . . . [by] actively searching for investors and
advertising and soliciting investors on behalf of the issuer."
(Def.'s Mem. 9.) F2G also claims that FV's "allegations that it
was to receive compensation in the form of commissions upon the
completion of a financing transaction show it was acting as a
broker-dealer." (Id. 10; see also Def.'s Reply 2 ("[FV] does
not and cannot deny that it identified and actively solicited
potential investors, prepared materials, met with potential
investors, and received transaction-based compensation, all of
which are strong factors in determining that an individual is
acting as a broker.").) FV maintains that it acted solely as a
"finder" and, thus, was not required to register as a broker
under the 1934 Act.

On the record before it, the Court holds that F2G cannot
demonstrate that FV behaved as a broker in violation of section
15(a)(1) of the 1934 Act. FV's Complaint establishes that FV
sought to "find potential [investors], stimulate interest and
bring parties together," rather than "bring the parties to an
agreement on particular terms." Jones, 2002 WL 485729, at *7;
Train, 635 F. Supp. at 279. On the present record, there is no

indicia that FV sells or previously sold securities of other
issuers, that FV makes valuations or gives advice regarding the
merits of an investment, and that FV participates in
negotiations between the issuer and the investor.  On the
contrary, the Complaint explicitly states that "FV did not
conduct negotiations on behalf of either" F2G or Kearny and that
after attracting Kearny's interest in investing in F2G, F2G's
officers, rather than FV's officers, met with Kearny
representatives and "negotiated with Kearny concerning the
proposed financing."  (Compl. ¶¶ 19, 22.)  Although FV is not
employed by F2G or Kearny, was supposed to receive commission
rather than a salary, and worked actively, rather than
passively, in finding investors for F2G, (id. ¶¶ 10-12, 17),
these factors, when compared to the factors present in other
cases where parties acted as unregistered brokers, are
insufficient for this Court to hold, as a matter of law, that FV
acted as a broker in violation of section 15(a)(1) of the 1934
Act.  See, e.g., Martino, 255 F. Supp. 2d at 283-84 (holding
that defendants "plainly acted as unregistered brokers" where
they "regularly solicited overseas clients" to engage in
securities transactions, "regularly acted as middlemen between
the U.S. sellers and foreign purchasers to complete these
transactions," were not employed by their clients, were paid on
a commission basis, "participated in the sale of stock of

numerous issuers over a period of several years," and "assisted

in negotiating the stock sales at issue"); Margolin, 1992 WL

279735, at *5 (finding "a substantial showing of likelihood of

success on the merits with respect to [plaintiff's] claim that

[defendant] operated as an unregistered broker in violation of

Section 15(a)(1)" where defendant "provided clearing services

for the securities trading of his clients," "participated in

dozens of transactions for various clients, . . .

demonstrat[ing] 'regularity of business activity,'" "receiv[ed]

transaction-based compensation, advertis[ed] for clients, and

possess[ed] client funds and securities"); Hansen, 1984 WL 2413,

at *10-11 (finding that defendant acted as an unregistered

broker in violation of section 15(a)(1) where defendant

"regularly participated at key points in the" securities

transaction, was not a salaried employee of the issuer,

"received commissions on his sales of interests in the

[securities] program," "[previously] had sold securities of . .

. another issuer, but [was] . . . denied [his] broker-dealer

registration application as a result of securities laws

violations during the course of that offering," "active[ly] and

aggressive[ly] [found] . . . investors and . . . frequently gave

those investors extensive advice with regard to the merits of

the [securities] programs"). Also unlike the aforementioned

cases, the record here does not indicate that FV regularly

engages in securities transactions.  (See Pls.' Opp'n 12 ("The
record here, which consists solely of the Complaint, does not
indicate that [FV] engaged in even a single securities
transaction.").)

    For the foregoing reasons, the Court cannot hold that FV
acted as an unregistered broker in violation of section
15(a)(1).  Accordingly, F2G's motion to dismiss FV's breach of
contract claim on the grounds of illegality is denied.


### III. **FV's Claim for Unjust Enrichment**

    FV asserts a claim for unjust enrichment for the
"considerable effort, and . . . measurable results" FV expended
"in securing a bona fide term sheet on 2FA's behalf."  (Compl. ¶
41.)  F2G moves to dismiss FV's unjust enrichment claim on the
grounds that "[t]he illegality of the contract precludes
recovery under equitable theories such as unjust enrichment."
(Def.'s Reply 7.)

    To state a claim for unjust enrichment, a party must allege
"'1) that the defendant benefited; 2) at the plaintiff's
expense; and 3) that equity and good conscience require
restitution.'"  Comprehensive Habilitation Servs., Inc. v.
Commerce Funding Corp., No. 05 Civ. 9640, 2009 WL 935665, at *20
(S.D.N.Y. Apr. 7, 2009) (Leisure, J.) (quoting Kaye v. Grossman,
202 F.3d 611, 616 (2d Cir. 2000) (Sotomayor, J.)).  "'[T]he

existence of a valid and enforceable written contract governing
a particular subject matter ordinarily precludes recovery in
[unjust enrichment] for events arising out of the same subject
matter.'" Banco Espirito Santo de Investimento, S.A. v.
Citibank, N.A., No. 03 Civ. 1537, 2003 WL 23018888, at *17
(S.D.N.Y. Dec. 22, 2003) (quoting U.S. E. Telecomms., Inc. v.
U.S. W. Commc'ns Servs., Inc., 38 F.3d 1289, 1296 (2d. Cir
1994)). A party may plead the alternative theories of breach of
contract and unjust enrichment. See Kermanshah v. Kermanshah,
No. 08 Civ. 409, 2010 WL 1904135, at *6 (S.D.N.Y. May, 11, 2010)
(Jones, J.) ("Although a plaintiff initially may raise both
breach of contract and unjust enrichment claims, a plaintiff
cannot prevail on both because the determination that an
enforceable contract existed necessarily precludes an unjust
enrichment claim based on the same underlying agreement.");
King's Choice Neckwear, Inc. v. Pitney Bowes, Inc., No. 09 Civ.
3980, 2009 WL 5033960, at *7 (S.D.N.Y. Dec. 23, 2009) ("Unjust
enrichment may be plead[ed] in the alternative where [a party]
challenges the validity of the contract."); Wilmoth v. Sandor,
686 N.Y.S.2d 388, 390, 259 A.D.2d 252 (App. Div. 1999) (holding
that claims for breach of contract and unjust enrichment may
survive a motion to dismiss where there is "a bona fide dispute
as to the existence or application of a contract").

The Court holds that here, where there is a dispute regarding the existence of a valid contract, the Complaint properly alleges a cause of action for unjust enrichment. Wilmoth, 686 N.Y.S.2d at 390.  FV's Complaint provides factual allegations that support an unjust enrichment claim.  (See Compl. ¶¶ 17-20, 28 (stating that F2G has failed to pay FV for FV's efforts in "work[ing] extensively and intensively to identify a qualified investor," "review[ing] and improv[ing] marketing documents for F2G, contact[ing] and evaluat[ing] many institutional investors as potential candidates for investment in F2G," and securing a bona fide term sheet for F2G from Kearny).)  Under these circumstances, FV states that F2G's retention of FV's fees is unjust.  (Id. ¶¶ 41-43.)  Although F2G maintains that a party to an illegal contract cannot recover under a theory of unjust enrichment, (Def.'s Reply 7), as already stated, the Court cannot hold as a matter of law on this record that the Contract is illegal.  Accordingly, F2G's motion to dismiss FV's unjust enrichment claim is denied.

## IV.  G.T. Jeffers's Third-Party Beneficiary Claim for Breach of Contract

G.T. Jeffers asserts a cause of action against F2G for breach of contract as an alleged third-party beneficiary to the Contract between FV and F2G.  To claim third-party beneficiary

status, G.T. Jeffers must plead "'(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [its] benefit and (3) that the benefit to [it] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [it] if the benefit is lost.'" Henneberry v. Sumitomo Corp. of Am., No. 04 Civ. 2128, 2005 WL 991772, at *12 (S.D.N.Y. Apr. 27, 2005) (Leisure, J.) (quoting State of Cal. Pub. Employees' Ret. Sys. v. Shearman & Sterling, 95 N.Y.2d 427, 434-35, 741 N.E.2d 101 (2000)).  A third-party beneficiary exists only if the contracting parties intended to confer a benefit on a third party; "it is not enough that some benefit incidental to the performance of the contract may accrue." McPheeters v. McGinn, Smith & Co., Inc., 953 F.2d 771, 773 (2d Cir. 1992) (denying defendant third-party beneficiary status where the signatories to a contract "entered into the Agreement for their own mutual benefit, not for the purpose of conferring a benefit on [defendant]," rendering defendant "an 'incidental beneficiary,' not a 'third-party beneficiary'").  Absent an intent to benefit a third party, "'the third party is merely an incidental beneficiary with no right to enforce the particular contract[].'"  Orbit One Commc'ns, Inc. v. Numerex Corp., 692 F. Supp. 2d 373, 383 (S.D.N.Y. 2010) (Kaplan, J.) (quoting Port Chester Elec. Constr. Corp. v. Atlas, 40 N.Y.2d 652, 655, 357

26

N.E.2d 983 (1976)). "'Although the parties' intention to benefit the third party must be gleaned from the face of the contract, the defendant's obligation need not be explicitly stated in the contract itself.'" Oost-Lievense v. N. Am. Consortium, P.C., 969 F. Supp. 874, 879 (S.D.N.Y. 1997) (quoting Cauff, Lippman & Co. v. Apogee Fin. Group, Inc., 807 F. Supp. 1007, 1020 (S.D.N.Y. 1992)). "[I]n determining third party beneficiary status it is permissible for the court to look at the surrounding circumstances as well as . . . the agreement." Fishbein v. Miranda, 670 F. Supp. 2d 264, 275 (S.D.N.Y. 2009) (Jones, J.).

G.T. Jeffers pleads very few facts in support of its breach of contract claim against F2G. The Complaint states conclusively that "G.T. Jeffers was a third-party beneficiary of the Contract" and that FV's primary owners—Messrs. Lucchese and Taub—"work out of G.T. Jeffers'[s] branch office in New York." (Compl. ¶ 4.) The Complaint also states that "F2G was well aware that FV would, if necessary, use . . . the registered broker-dealer G.T. Jeffers . . . to carry out its obligations under the Contract" and that "every page of FV's website disclosed the relationship between FV and G.T. Jeffers by stating that 'Securities [are] offered through G.T. Jeffers and Company.'" (Id. ¶ 32.) Lastly, the Complaint states that one of the invoices FV sent to F2G for its breakup fee was "payable

27

to G.T. Jeffers." (Id. ¶ 25.) From these limited factual allegations, the Court must determine whether G.T. Jeffers states a claim for breach of Contract as a third-party beneficiary.

The Court holds that the Complaint does not contain sufficient factual allegations that G.T. Jeffers was a third-party beneficiary to the Contract. Read in a light most favorable to G.T. Jeffers, the Complaint pleads the existence of a valid contract between FV and F2G, satisfying the first element of the third-party beneficiary test. Henneberry, 2005 WL 991772, at *12. However, G.T. Jeffers does not plead enough facts in support of the second and third elements of the third-party beneficiary test—that the Contract was intended to benefit G.T. Jeffers and that this benefit was immediate, rather than incidental, such that FV and F2G assumed a duty to compensate G.T. Jeffers if the benefit was lost. See id. Though FV alleges that the Contract explicitly states that FV would use the services of a registered-broker dealer if necessary, (Compl. ¶ 32), neither FV nor G.T. Jeffers pleads facts to show that F2G intended the Contract to benefit G.T. Jeffers specifically. Without pleading facts to show FV's and F2G's intention to benefit it, G.T. Jeffers cannot claim that the intended benefit was "sufficiently immediate" to merit relief. Hennebery, 2005 WL 991772, at *12; see also Port Chester Elec., 40 N.Y. at 655.

28

That Messrs. Lucchese and Taub work out of G.T. Jeffers's office, FV sent an invoice to F2G payable to G.T. Jeffers, and FV's website states that FV offers securities through G.T. Jeffers shows, at most, "that some benefit incidental to the performance of the contract may accrue" to G.T. Jeffers, which "is not enough" for G.T. Jeffers to enforce the underlying contract. McPheeters, 953 F.2d at 773; see also Orbit One Commc'ns, 692 F. Supp. 2d at 383. The Court also finds that the conclusive statement, unsupported by factual allegations, that "G.T. Jeffers was a third-party beneficiary of the Contract," (Compl. ¶ 4), is "not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950.

Accordingly, F2G's motion to dismiss G.T. Jeffers's third-party beneficiary breach of contract claim is granted.

## V. G.T. Jeffers's Claim for Unjust Enrichment

For the reasons discussed above, the Court also holds that G.T. Jeffers fails to state a claim for unjust enrichment. G.T. Jeffers pleads no facts indicating that F2G benefited at G.T. Jeffers's expense and that "equity and good conscience" compel recovery on unjust enrichment grounds. Comprehensive Habilitation, 2009 WL 935665, at *20. To the extent that G.T. Jeffers asks the Court to glean that G.T. Jeffers must have offered services to F2G because of the invoice that FV sent to

F2G payable to G.T. Jeffers, the Court declines to do so in light of the absence of factual allegations demonstrating that G.T. Jeffers expended effort to benefit F2G.

For the foregoing reasons, F2G's motion to dismiss G.T. Jeffers's claim for unjust enrichment is granted.


## VI.  Leave to Amend

Where a complaint fails to plead a plausible claim for relief, a Court may grant leave to amend. See Fed. R. Civ. P. 15(a)(2) ("The court should grant leave [to amend] when justice so requires."); Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009).  Leave to amend need not be granted, however, where the proposed amendment would be futile. Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 18 (2d Cir. 1997) (Kearse, J.).  Also, "'[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'"  Holmes, 568 F.3d at 334 (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)).

Although FV and G.T. Jeffers, in their brief in opposition to F2G's motion to dismiss, do not request that the Court grant them leave to amend the Complaint if the Court grants F2G's motion to dismiss, the Court may grant leave to amend sua sponte.  See S. Ill. Laborers' & Employers Health & Welfare

Fund v. Pfizer Inc., No. 08 Civ. 5175, 2009 WL 3151807, at *1,

(S.D.N.Y. Sept. 30, 2009) (granting plaintiffs leave to amend

most of their claims sua sponte); Witkowich v. Gonzales, 541 F.

Supp. 2d 572, 590 (S.D.N.Y. 2008) ("Although plaintiff has not

moved to supplement the Complaint with his retaliation claim, we

grant him leave to do so sua sponte."); Steger v. Delta

Airlines, Inc., 382 F. Supp. 2d 382, 387 (E.D.N.Y. 2005)

("[E]ven if not requested by the Plaintiff, the Court may sua

sponte grant leave to amend.").  The Court, therefore, sua

sponte grants G.T. Jeffers thirty (30) days leave to amend the

Complaint consistent with this Opinion and Order.

## Conclusion

For the foregoing reasons, F2G's motion to dismiss FV's claims for breach of contract and unjust enrichment is DENIED. F2G's motion to dismiss G.T. Jeffers's claims for breach of contract and unjust enrichment is GRANTED and G.T. Jeffers's claims are dismissed without prejudice.  The Court grants G.T. Jeffers thirty (30) days from the date of the Opinion and Order to file an Amended Complaint.  The Clerk of the Court is asked to close docket number 6.


**SO ORDERED.**
**New York, New York**

August _11_, 2010

_Rita K. Ferme_ _____

U.S.D.J.



Copies of this Opinion and Order have been e-mailed to:

Erik Scott Groothuis
Schlam Stone & Dolan LLP
26 Broadway
New York, NY 10004

Allen Rafael Wolff
Joshua S. Androphy
Olshan, Grundman, Frome, Rosenzweig & Wolosky, LLP
65 East 55th Street
New York, NY 10022